FREDERICK F. GUILD, receiver of the Commercial Building and Loan Association,

*v.*

JENNIE E. BAKER et al.

[Decided December 1st, 1904.]

1. A certificate of stock in a building association recited that the holder was entitled to interest on the amount paid for the stock, and provided that the certificate might be surrendered by the holder when he should receive the full amount thereof, with interest. The association assigned to the holder a mortgage as collateral.—*Held*, that the holder, as against other stockholders, was entitled to treat the certificate as a promise on the part of the association to pay the amount thereof, and to hold the mortgage as security therefor.

2. The fact that the holder of a certificate of stock in a building association secured by a mortgage assigned to him as collateral made a claim on the certificate in insolvency proceedings against the association, did not prevent him from holding the mortgage as collateral.

On final hearing on bill, answer and proofs.

*Mr. Frederick F. Guild, pro se.*

*Mr. John Whitehead,* for the defendant Jennie E. Baker.

PITNEY, V. C.

The matter in dispute between the parties is the ownership of a bond and mortgage, made in July, 1899, by one Bayne and wife, to the Commercial Building and Loan Association, for $1,000.

The complainant, Guild, claims it by virtue of a vesting order of this court, made in November, 1902, in and by which he was appointed receiver of the said building and loan association, and it was declared insolvent.

The defendant Jennie Baker claims it by virtue of an assignment, accompanied by actual delivery, executed by the corporation to her for a consideration of $1,000, in cash, then presently advanced by her to the corporation.

The facts, more in detail, are as follows:

At and before the 1st of February, 1902, Mrs. Baker and her husband, who reside in New York, were social acquaintances of Mr. Frederick M. Payne and his wife. Mr. Payne was the treasurer of the corporation and his law partner, Mr. Whitehead, was the president thereof. Mrs. Baker was the holder of five shares of the stock of the company. On the evening of one of the last days of January, 1902, Mr. and Mrs. Payne were making a social visit to Mr. and Mrs. Baker, in the course of which Mrs. Baker stated to Mr. Payne that she had $1,000 which she wished to invest on safe security at six per centum interest.

Mr. Payne, knowing that the corporation was pressed for money, suggested to Mrs. Baker that she should invest her $1,000 in full paid stock of the corporation. This she positively declined to do, and her husband joined, with emphasis, in her determination, saying that he had heard that the corporation was not in good standing. Mr. Payne then suggested that he might be able to give her a mortgage, and she handed him the $1,000, upon condition that it should be invested in a mortgage.

Mr. Payne paid the money into the treasury of the corporation, and, at or about the same time, he made a formal application, on a printed blank, to the board of directors for five fully paid Commercial Building and Loan Association shares, of $200 each. The application was signed, in his handwriting, "Jennie E. Baker by F. M. Payne, her attorney," and contained a provision that it was on the understanding that, by giving sixty days' notice, the holder of the stock could withdraw the full value of her holdings, with interest at six per centum per annum, and that the stock should bear interest at six per centum per annum, payable semi-annually.

At a meeting of the board of directors, on the 11th of February, the pressing need of the corporation for money was under consideration, and the following minute was passed:

"Mr. Payne then informed the board that he had $1,000 that he could put in the association belonging to Mrs. Jennie Baker, providing the ass'n could assign to Mrs. Baker a mortgage for like amount as col. security, but as some of the board did not think favorable of making any one member a preferred one, the following resolution was passed: Whereas, a certain Jennie Baker has $1,000 and is desirous of investing same in stock of this ass'n, providing she can get an assignment of a mtge of sufficient amount as coltr security, be it resolved that said $1,000 be accepted, issuing a certificate for 5 shares of fully paid stock, also assigning as further col security a certain mortgage given by Arthur Bayne to ass'n, amount of said mtge being $1,000. Without precedent."

Thereupon, but under date of February 3d, 1902, a certificate, in the ordinary form, that Mrs. Baker was the holder of five shares of $200 each in the association, was executed under the seal of the corporation and the signatures of its officers.

Across the upper part of the face of the certificate were printed the following words:

"The holder of this certificate is entitled to interest on the amount paid, at the rate of six per cent. per annum, payable semi-annually.

"This certificate may be surrendered by the holder, or called in by the association, at any time after ——— year from the date hereof, by giving due notice, when the holder hereof shall receive the full amount paid, together with the interest due and unpaid, to the date of said notice of surrender, under article IX. of the constitution and by-laws."

The corporation then executed to Mrs. Baker an assignment of the Bayne mortgage as collateral to her stock.

This assignment was never recorded and has been lost, and its precise language cannot be determined, but the distinguishing word seems to have been "collateral."

The certificate of stock, the bond and mortgage and assignment were forwarded to Mrs. Baker and retained by her without protest.

The corporation, as we have seen, went into the hands of a receiver the following November, and in January, 1903, the usual order limiting creditors was made.

It turned out that there were ample assets to pay all the creditors except the stockholders, most, if not all, of whom held certificates of stock of the same character and with the same right of withdrawal as that found in the certificate of Mrs.

Baker. It soon appeared that as to these the association was hopelessly insolvent.

In order to facilitate the winding up the receiver prepared a blank affidavit to be made by the stockholders, whose holdings, with the number of the certificate and the number of shares held by each he obtained from the stubs of the certificate book, and to each he mailed a printed notice of the order limiting creditors and a blank affidavit.

This blank affidavit was received by and filled out by Mrs. Baker, duly verified by her on March 24th, and returned to the receiver. In it she swears that she is the owner of five shares of stock, of the value of $200 each, witnessed by the certificate number 210, being the certificate issued as above mentioned.

The fact that the Bayne bond and mortgage, so given to the company, had been assigned and delivered to Mrs. Baker, coming to the knowledge of the receiver, he obtained leave of the court to begin this suit. Since its commencement the mortgagor (Bayne), desiring to discharge his mortgage, was permitted so to do by paying the money to the receiver, who, by stipulation, holds it subject to the further order of this court.

Counsel for the complainant claims that the result of the whole transaction was that Mrs. Baker became a stockholder in the corporation and entitled to share in the profits of the enterprise, and thereby liable to stand her share of the losses, and that equity will not permit her, as against creditors, to occupy that position and also to receive collateral security, or any security, for the money which she advanced for the stock.

If counsel's premises of the facts are correct, his conclusions thereon are, I think, indisputable.

It was so distinctly held in the case of *Boney v. Williams*, 55 *N. J. Eq.* (*10 Dick.*) *691*, by Vice-Chancellor Grey, and, again, by the same judge, in *Reed* v. *Helois Carbide Specialty Co.*, *64 N. J. Eq.* (*19 Dick.*) *231*.

The same principle was, in substance, held in *Black* v. *Hobart Trust Co.*, *64 N. J. Eq.* (*19 Dick.*) *415*, in which case the decree of this court was affirmed by the court of errors and appeals for the reasons given by me in this court.

But in each of those cases the question arose between the mortgagee of the insolvent corporation, who was also a stockholder, and the general creditors of that corporation.

The question did not, as here, arise, after the payment of the general creditors, upon a division of the assets among the stockholders.

It is earnestly argued by counsel for defendant that the circumstance that in the present case there are no general creditors remaining unsatisfied distinguishes the present from the decided cases just mentioned.

Before discussing that point, let us consider the question of fact.

In the *Black Case* I stated that the examination of the cases led to the conclusion that the crucial question in that class of cases was, did the party claiming the benefit of a security occupy the position of a stockholder or that of a creditor?

Let us see what position Mrs. Baker occupies here.

It seems to me that, on the evidence, Mr. Payne was not authorized by Mrs. Baker to apply for and procure to be issued to her the shares of stock in question. His doing so was entirely without her warrant, and did not, at the start, bind her at all. His authority was confined entirely to loaning her money on bond and mortgage, or other good security, excepting always the stock of his company. If he had contented himself with simply procuring the assignment of the Bayne mortgage to her in exchange for her $1,000, the transaction would have been entirely within his authority. The power of the company to assign the mortgage for cash was indisputable. But he went further, and procured the stock to be issued to her. Just why he did that, and what was his object, the case does not disclose.

Both Mr. and Mrs. Baker admit that she, at once, observed the certificate for stock among the papers, and so were fully aware of what had been done. She had the benefit of the advice of her husband, and, it seems to me, that her acquiescence in the situation was such as to bind her, and, if the certificate of stock was of the ordinary form only, I should say that she had become a stockholder in the ordinary sense.

But the certificate, although in the ordinary form, contained, on its face, in conspicuous print, the words above quoted.

These words were authorized by an article in the constitution and by-laws of the association.

Now, upon mature consideration, I come to the conclusion that the certificate of stock, with those words printed upon it, was, in effect, a promise by the corporation, under its seal, to repay, with interest, the amount paid by Mrs. Baker in accordance with the terms of the special imprint above mentioned, and that she, upon reading it, had a right so to treat it, and to hold the mortgage as security for what, in effect, was a promise in writing to pay her $1,000, with interest.

This view does no injustice to any other stockholder. The association received cash to the full value of the assets with which it parted. There was no element of an attempt to secure a prior creditor. The association was enabled, by the funds so received, to pay off and satisfy a stockholder who was asserting and threatening to enforce his right of withdrawal under a similar certificate.

I do not think that Mrs. Baker should be prejudiced by the sworn claim which she made upon her stock under the circumstances above stated. The mortgage was assigned to her merely as collateral security. That made it proper, if not necessary, for her to make a claim on the sealed obligation called the certificate of stock above described.

My conclusion, therefore, is that the money in the hands of the receiver should be paid to Mrs. Baker, but under the peculiar circumstances in the case I think no costs should be awarded to either party.

I shall advise a decree accordingly.